UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ASHLEY GREENE,<br><br>Plaintiff,<br><br>v.<br><br>TRELLEBORG SEALING SOLUTIONS US, INC.,<br><br>Defendant. | Case No. 1:24-CV-454-CCB |

**OPINION AND ORDER**

Before the Court is Defendant Trelleborg Sealing Solutions US, Inc.'s ("Trelleborg") Motion for Summary Judgment. (ECF 50). Plaintiff Ashley Greene opposes this motion. (ECF 67). The Court grants Trelleborg's motion for the following reasons.

## I. RELEVANT BACKGROUND

This is an employment discrimination and sexual harassment case. Ms. Greene alleges that she was discriminated against, sexually harassed, and retaliated against for complaining of discrimination on the basis of her sex and for reporting sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (ECF 6). She further alleges that she was constructively discharged as a result of the discrimination and retaliation. (*Id.*) Trelleborg now moves for summary judgment, contending that: (1) Ms. Greene's claims are precluded by her contractual agreement to a shortened statute of limitations, (2) her discrimination claim fails as a matter of law under both the burden-shifting and holistic methods of proof, (3) her

retaliation claim also fails under both approaches, and (4) her sexual harassment claim fails as a matter of law.

Several issues arise in the parties' statements of material facts that must be resolved before the Court may proceed. First, Trelleborg notes that Exhibit A to Ms. Greene's statement of material facts, (ECF 69-1), was never produced to Trelleborg despite Trelleborg's repeated requests calling for its production.[1] As Trelleborg correctly notes, it was Ms. Greene's responsibility under Federal Rule of Civil Procedure 26(a) to produce all documents that she might use to support her claims. As Ms. Greene has offered no reason that her "violation of Rule 26(a) was either justified or harmless," her failure to produce this document triggers the "automatic and mandatory" sanction of exclusion. *Salgado v. General Motors Corp.*, 150 F.3d 753, 742 (7th Cir. 1996).

Even if the Court were to consider this exhibit, it does not appear to be material to any part of this dispute. Ms. Greene only relies upon Exhibit A at three points: her partial admission of Trelleborg's Material Fact 9, (ECF 68 at 3), her full admission of Trelleborg's Material Fact 10, (*id.*), and her Additional Material Fact 70, which Trelleborg denies, (ECF 72 at 36). Trelleborg's Material Fact 9 reads as follows: "The Equal Employment Opportunity and Anti-Harassment Policy explains that Trelleborg does not tolerate discrimination, including sexual harassment, and it explains the

---

[1] Trelleborg states in its Reply to Plaintiff's Response to Trelleborg's Statement of Material Facts that Ms. Greene "has only produced the first page of Exhibit A during this litigation, despite numerous discovery requests calling for its production." (ECF 72 at 2). The first page of Exhibit A is a cover page bearing the title "Orientation." (ECF 69-1 at 1). Ms. Greene offered no explanation for this failure to produce when she attached the document to her Statement of Additional Material Facts. (ECF 68 at 3).

procedure for employees to lodge complaints of harassment or discrimination. (Greene Dep. at 82:10-87:11; Employee Handbook).” (ECF 68 at 2). Ms. Greene responds by purporting to “[p]artially admit” this fact, then goes on to state that “Trelleborg may have such a policy but it was not followed or enforced with respect to the Plaintiff (Pl. Aff. ¶ 4; See attached policy).” (*Id.*)

Exhibit A, which appears to be a collection of Trelleborg orientation documents, does not contradict Trelleborg’s Material Fact 9 nor support the additional context Ms. Greene attempts to add in her response. As Ms. Greene admits Material Fact 10, there is no dispute of material fact for Exhibit A to support. And Exhibit A does not properly support Ms. Greene’s Additional Material Fact 70. This proposed material fact reads:

> The Employee Handbook provided by Trelleborg to Plaintiff was in a form of a binder entitled “Orientation” (Ex. A). This “Orientation” Handbook was primarily for union employees and included the agreement between Trelleborg Sealing Solutions—Fort Wayne GOEP, Division and The United Steel, Paper, Forestry, Rubber, Manufacturing, Energy Allied Industrial and Service Workers Union AFL-CIO-CLC (Local 7-0304). The orientation handbook also included “Plant Rules” (which included a Discipline Schedule) (Ex. A).

(ECF 72 at 36). Very little of Ms. Greene’s proposed fact is substantiated by Exhibit A. There is no indication in Exhibit A that it was primarily for union employees, nor that the agreement contained within was made between Trelleborg and the unions Ms. Greene lists. Nor is there any indication in the exhibit (or cited elsewhere in the proposed fact) that this was the handbook given to Ms. Greene. It is accurate that Exhibit A contains a “Plant Rules” section that includes a discipline schedule. But without citation to evidence that this exhibit was the “handbook” given to Ms. Greene, Exhibit A does not properly support even this portion of Ms. Greene’s proposed

material fact. *See* N.D. Ind. L.R. 56-1(b)(2)(D)(ii) (requiring a party opposing summary judgment include "a citation to evidence supporting each [additional material] fact").

Next, Trelleborg points out a pattern of issues in Ms. Greene's response to Trelleborg's statement of material facts. Many of Ms. Greene's responses purport to "partially admit" a fact, then go on to offer additional details that do not contradict any element of that fact. For example, Trelleborg's Material Fact 48 asserts that "Ms. Greene admits it is possible that Mr. Degitz simply did not like her." (ECF 68 ¶ 48). Ms. Greene's response: "Partially admit. Perhaps Degitz did not like Plaintiff, but he nevertheless sexually harassed her and treated her differently." (*Id.*) This is not a denial. Nor is it a partial admission. It is a full admission followed by an attempt to contextualize, and the Court will treat it as such.

At other points, Ms. Greene purports to partially admit a fact advanced by Trelleborg, but provides no explanation qualifying her admission, (*id.* ¶ 62 ("[p]artially admit[ing]" a fact with no additional explanation)), leaves a blank space where a pin citation to supporting evidence should go, (*id.* ¶ 67 ("(Pl. Aff. ¶___).")), or provides an explanation wholly unrelated to the substance of the material fact she purports to dispute, (*id.* ¶ 65 (responding to the statement that "Ms. Greene understood she could report complaints to HR" by stating that Mr. Degitz would "kick the trash at Plaintiff 'daily'")). In these instances, and all others where Ms. Greene fails to legitimately dispute Trelleborg's material facts, the Court will treat Trelleborg's facts as admitted. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in

the manner dictated by the rule, those facts are deemed admitted for purposes of this motion."). Accordingly, the undisputed facts are these:

Ms. Greene started working for Trelleborg on October 21, 2019. (ECF 51-1 at 72:17–23). At the time Trelleborg hired Ms. Greene, she signed an offer letter. (*Id.* at 164:13–165:7). She was hired as a Maintenance, Repair, and Operation ("MRO") Buyer in the Purchasing department. (*Id.* at 72:24–73:06). She remained in this position throughout her time at Trelleborg. (*Id.*)

Trelleborg maintains an Equal Opportunity and Anti-Harassment Policy that covered Ms. Greene during her employment. (*Id.* at 82:10–87:11). That policy explains that Trelleborg does not tolerate discrimination, including sexual harassment, and it explains the procedure for employees to lodge complaints of harassment or discrimination. (*Id.*) The parties dispute which precise version of the policy Ms. Greene received from Trelleborg, but they agree that she was aware of the policy and its complaint procedure. (ECF 68 ¶ 10). Ms. Greene was also aware she could go to the human resource department or her manager to report complaints of discrimination or harassment. (ECF 51-1 at 86:3–87:11).

The parties also agree that Ms. Greene successfully availed herself of this complaint process on at least one occasion. Ms. Greene's initial supervisor was Controller Michelle Esterline. (*Id.* at 79:24, 80:11–13). On or around August 4, 2022, Ms. Greene complained to Ms. Esterline that a coworker's behavior toward Ms. Greene, including touching her hand, made her uncomfortable. (*Id.* at 217:23–220:13). Ms. Esterline addressed this complaint right away. (*Id.*)

In October 2022, Ms. Esterline was replaced as Ms. Greene's supervisor by Tom Degitz. (*Id.* at 80:22–81:02, 200:18–23). Before this change, Mr. Degitz was a Raw Materials Buyer within the Purchasing Department who also reported to Ms. Esterline. (*Id.* at 76:15, 80:11–13). But when Ms. Esterline was promoted to Regional Controller, Mr. Degitz was promoted to Purchasing Manager, with Ms. Greene reporting to him. (*Id.* at 80:22–81:02). Mr. Degitz in turn reported to Rebecca Breneke. (*Id.* at 80:14–21). Once Mr. Degitz became Purchasing Manager, he began cross-training Ms. Greene on the purchase of raw materials. (*Id.* at 79:07–15, 80:08–10).

Around October 2022, Trelleborg directed employees in the Purchasing Department to begin returning to in-person work part-time, as opposed to working a primarily remote schedule. (*Id.* at 161:13–163:12; ECF 51-2 ¶ 14). Ms. Greene was permitted the flexibility to arrive late and leave early on in-office days to address her childcare needs. (ECF 51-1 at 161:13–163:12). Around May 2023, Mr. Degitz informed Ms. Greene that Trelleborg was requiring all manufacturing and manufacturing support employees, including Ms. Greene, to return to full-time in-person work. (*Id.* at 190:18–191:23). Human Resources Generalist Stacy Standish, Ms. Brenneke, Mr. Degitz, and Ms. Esterline met with Ms. Greene on May 24, 2023, to discuss concerns related to her schedule, her reporting structure, her performance review and compensation, and the manner of her communications. (ECF 51-2 ¶¶ 15–17, Exhibit 2). Ms. Greene made a recording of the meeting. (ECF 133:17–134:16, 272:14–273:08).

Ms. Greene understood that the decision to require her to return to work was not made by Mr. Degitz. (ECF 51-3 at 15:55–16:15). During the meeting, Ms. Greene

expressed that she was concerned about returning to the office because of the cost of gas to drive in, the requirement that she dress up for work, and the distractions she experienced at work, such as employees playing with fidget spinners, the noise from scanning documents, and other irritants of in-person office work. (*Id.* at 13:08–13:30, 16:40–20:01, 20:16–20:30). Ms. Brenneke told Ms. Greene that she would speak to the team about Ms. Greene's concerns about distractions. (*Id.* at 13:08–13:30, 16:40–20:01). Ms. Greene explained during the meeting that she was a single mother who struggles financially and was working a second job, which made her extremely tired. (*Id.* at 13:30–13:40; ECF 51-1 at 44:18–45:10). She informed the other meeting attendees that she had to medicate herself to go into the office. (ECF 51-3 at 17:33–17:40).

Ms. Greene also discussed her compensation at the meeting. During her last year of employment, she received a raise. (ECF 51-1 at 160:8–11). She understood, though, that allotment for salary increases had decreased across the board for all employees at Trelleborg that year. (ECF 51-3 at 12:35–13:05). During the meeting, Ms. Esterline informed Ms. Greene that her performance had been "up and down" and "rocky" during the last year. (*Id.* at 6:50–10:23). Ms. Esterline explained that she had received complaints from other employees about Ms. Greene's communication style over Teams, in person, and on the phone. (*Id.*) Ms. Greene admitted that her performance had been rocky or uneven. (*Id.* at 7:43–8:03). Ms. Greene also admitted that Trelleborg had directed her to speak more politely to a fellow employee. (ECF 51-1 at 235:3–239:2). Outside the specific context of this meeting, Ms. Greene admits that she would commonly use terms like "BS" and "WTF" to Ms. Esterline. (*Id.* at 206:3–24). She also

admits that she was warned about her unprofessional email tone by Ms. Standish. (*Id.* at 239:3–244:18). She suffered from alcoholism while working at Trelleborg, which caused general irritability. (*Id.* at 289:23–291:17). In June 2022, while stressed over personal circumstances and her working relationship with Ms. Degitz, Ms. Greene told Ms. Esterline that she was quitting before later changing her mind. (ECF 51-3 at 8:19–9:44; ECF 51-1 at 212:8–24, 214:8–14). During the meeting, though, Ms. Greene only expressed that she was frustrated with Mr. Degitz because he had apparently texted her about the status of her returning to work while failing to give her "consideration" about her surgery or ask "how she was doing." (ECF 51-3 at 11:20–12:05).

Ms. Greene testifies in her deposition that Mr. Degitz constantly told her she was ugly. (*Id.* at 103:2–11). She reports that Mr. Degitz told her that she should be in the kitchen and not in a purchasing role. (*Id.* at 136:4–7). According to Ms. Greene, Mr. Degitz would kick trash and recycle bins at Ms. Greene or throw things at her daily when she worked in-person. (*Id.* at 114:14–121:18). Ms. Greene admits that she struggles to recall the details and frequency of these comments and behaviors, (*id.* at 136:4–23), but she recalls reporting Mr. Degitz multiple times to HR and Ms. Esterline via email, in-person conversations, or Teams messages. (*Id.* at 126:20–131:23).

As a general matter, Ms. Greene largely avoided Mr. Degitz, including on Teams messaging. (*Id.* at 105:21–23).[2] When she did correspond with him via Teams, the messages he sent were not sexually harassing. (*Id.* at 103:2–11, 105:2–6). But Ms. Greene

---

[2] Ms. Greene purports to straightforwardly deny this fact, but her explanation is completely unrelated to the fact. (*See* ECF 68 ¶ 44 ("Denied. Plaintiff was not upset that she did not get invited. She was upset by the workload and the lack of clear instructions, as to what was happening.")). Without a proper denial, the Court treats this fact as admitted.

recalls Mr. Degitz calling her a "cunt" frequently, including on at least two specific occasions. (*Id.* at 106:11–114:13). Ms. Greene admits it is possible Mr. Degitz simply personally disliked her. (*Id.* at 136:1–3).

On August 9, 2023, Mr. Degitz notified Ms. Greene that, due to a company-wide policy, her job title was changing from MRO Buyer to Purchaser. (*Id.* at 239:11–240:11). This was part of Trelleborg's effort to ensure uniform titles across the company. (*Id.*) Ms. Greene was unaware of who made the decision to change her title, and she was frustrated by the change. (*Id.* at 152:6–153:16, 158:23–159:1 239:11–245:15). But she admits that Trelleborg could not have retaliated against her by changing her job title if all the employees in her position across the country had their job titles changed from MRO Buyer to Purchaser. (*Id.* at 159:16–19). On August 11, 2023, she resigned from Trelleborg. (*Id.* at 76:4–8, 95:15–17, 160:24–161:4, 246:15–247:8).

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d

278, 282 (7th Cir. 2003). But the Court will not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor will the Court conduct research or develop arguments for the parties. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

To survive summary judgment, the nonmovant "cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## III. Analysis

Ms. Greene alleges that while working at Trelleborg, she was discriminated against, sexually harassed, and retaliated against for complaining of discrimination on the basis of her sex and for reporting sexual harassment. (ECF 6). She further alleges that she was constructively discharged as a result of the discrimination and retaliation. (*Id.*) Trelleborg moves for summary judgment on all aspects of Ms. Greene's complaint.

As a threshold matter, Trelleborg argues that Ms. Greene's claims are precluded by her contractual agreement with Trelleborg, which included a shortened statute of limitations period during which Ms. Greene could bring employment-related claims against Trelleborg. Trelleborg also attacks the substance of Ms. Greene's claims, contending that (1) she did not suffer an adverse employment action, (2) she cannot show discrimination under the burden-shifting or holistic methods of proof, (3) she cannot show retaliation, and (4) she cannot show sexual harassment.

**a. Contractual Limitation**

Because the potential contractual limitation of Ms. Greene's claims could dispose of this matter without requiring a merits analysis, the Court begins there. Ms. Greene's offer letter from Trelleborg, which Ms. Greene signed, provides as follows:

> As a condition of employment or continued employment and to the extent permitted by law, I agree not to file any action or suit relating to or arising out of my application for employment or employment with the Company more than 180 calendar days (or in less time if any applicable law so requires) after the event and/or employment practice or action complained of including but not limited to, failure to hire, employment termination and discrimination claims against the Employer or its agents, claims for wages, salary, commissions or expenses, and I agree to waive any statutes of limitation to the contrary (except those requiring a shorter period). I understand and agree that any action or lawsuit filed outside this 185[3] day period will be barred forever. I understand and agree that the 180 day period (or applicable shorter period) will not be extended for any reason, including continuing violations. I further understand that the filing of complaint internally with the employer does not toll or extend the 180 day period for filing a civil lawsuit, claim, or charge.

[3] This one reference to "185" days, as opposed to 180, is not explained. Trelleborg takes the position at summary judgment that the period of limitation should be treated as 185 days.

(ECF 51-1 at 205). Trelleborg asserts without objection from Ms. Greene that Indiana law applies here. Indiana law permits parties to contract for shortened statutes of limitation so long as those limitations periods are reasonable. *Summers v. Auto-Owners Ins. Co.*, 719 N.E. 2d 412, 414 (Ind. Ct. App. 1999).

It is undisputed that Ms. Greene resigned from Trelleborg on August 11, 2023. It is also undisputed that she filed this action on October 7, 2024, more than a year later. Thus, Trelleborg contends that Ms. Greene is precluded from bringing this action. But, as Ms. Greene points out, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 20, 2023, (ECF 6 at 1; ECF 6-1 at 1), and the EEOC issued her a right-to-sue letter on July 11, 2024, (ECF 6-1 at 3). Trelleborg dismisses this EEOC proceeding as "not relevant," maintaining that "[t]he fact that Plaintiff filed an administrative charge does not negate, nor toll, her independent contractual obligation to file suit within the agreed upon period." (ECF 73 at 4).

This is wrong. Until she exhausted her administrative remedies by filing a charge with the EEOC and receiving a right-to-sue letter, Ms. Greene was unable to bring a Title VII action in this Court. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). Thus, a contractual provision that required her to sue in federal court without regard to the exhaustion of her administrative remedy "would be contrary to public policy" because administrative review of the filed charge can, and here did, extend beyond the contractual limitations period. *Lugihibl v. Fifth Third Bank*, 13-cv-7193, 2015 WL 1235221, at *2 (N.D. Ill. March 16, 2015); *see also Sanford v. Quicken Loans,* No. 13–11929, 2014 WL

266410 (E.D. Mich. Jan. 24, 2014); *Mazurkiewicz v. Clayton Homes, Inc.,* 971 F. Supp. 2d 682 (S.D. Tex. 2013); *Friedmann v. Raymour Furniture Co., Inc.,* No. CV 12–1307(LDW)(AKT), 2012 WL 4976124 (E.D. N.Y. Oct. 16, 2012); *O'Phelan v. Fed. Express Corp.,* No. 03 C 00014, 2005 WL 2387647 (N.D. Ill. Sept. 27, 2005); *Mabry v. W. & S. Life Ins. Co.,* No. 1:03 CV 848, 2005 WL 1167002 (M.D. N.C. Apr. 19, 2005); *Lewis v. Harper Hosp.,* 241 F. Supp. 2d 769 (E.D. Mich. 2002); *Salisbury v. Art Van Furniture,* 938 F. Supp. 435 (W.D. Mich. 1996). The Court declines to dismiss Ms. Greene's claims on this basis, as there is a genuine issue over whether this contractual provision is enforceable.

**b. Gender/Sex Discrimination**

Trelleborg next contends that Ms. Greene's discrimination claim cannot survive summary judgment because, as a matter of law, she did not suffer an adverse employment action.

To prevail on her Title VII discrimination claim, Ms. Greene must show that she suffered an adverse employment action. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). The Seventh Circuit has explained that an adverse employment action means "some harm respecting an identifiable term or condition of employment." *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1336 (7th Cir. 2024) (quoting *Muldrow v. St. Louis*, 601 U.S. 346, 355 (2024)). Some examples of adverse employment action include "delaying training, denying vacation times, transferring shifts, and considering family circumstances in a biased way." *Arnold v. United Airlines, Inc.*, 142 F.4th 460, 470–71 (7th Cir. 2025). In contrast, "a swapped role . . . in the same building . . . [that does] not affect

the employee's position, job duties, salary or benefits," placement on a performance improvement plan, or company reorganization that brings about some changes in an employee's daily responsibilities are not adverse actions. *Id.* (internal quotation omitted).

In her complaint, Ms. Greene alleges that she suffered adverse employment actions when she was deprived of the hybrid work schedule other employees enjoyed, denied her annual raise despite meeting all performance requirements, and had her job title changed without explanation of her new responsibilities or benefits.[4] (ECF 6 ¶ 8). She also alleges that she was constructively discharged. (*Id.* ¶ 10). Both parties now agree that Ms. Greene did in fact receive her annual raise, so the Court need not address this issue. Trelleborg argues that the remaining three actions Ms. Greene puts forward are not adverse employment actions as a matter of law.

Trelleborg first contends that the change to Ms. Greene's schedule was not an adverse employment action. By Ms. Greene's own account, when she started at Trelleborg, she had to be in the office five days a week. (ECF 51-1 at 74:6–8). Then, during the COVID-19 pandemic, she went fully remote. (*Id.* at 74:9–19). Both parties agree that Mr. Degitz informed Ms. Greene around May 2023 that Trelleborg was implementing a company-wide directive for all manufacturing and manufacturing support employees, including Ms. Greene, to return to full-time in-person work. (ECF

---

[4] At various points in her brief, Ms. Greene characterizes many other things as adverse actions, including "emotional distress, mental anguish, exacerbation of depression and anxiety, outpatient therapy at Parkview Behavioral Health, [and] having to take medication." (ECF 67 at 8). As should be abundantly obvious, these are not adverse employment actions. They are not even actions. At most, they are consequences of actions. Accordingly, they do not bear on whether Trelleborg took adverse employment action against Ms. Greene.

68 ¶ 20). This is substantiated by Ms. Esterline's declaration. (ECF 51-2 ¶¶ 14–17, 23). Ms. Greene expressed confusion about this, so Ms. Esterline, Ms. Brenneke, Ms. Standish, and Mr. Degitz planned over email to meet with Ms. Greene, discuss the expectation that Ms. Greene work in the office every day, and explain that the policy had changed as a result of the end of the COVID-19 pandemic. (ECF 51-2 at 13). Ms. Greene's recording of the meeting shows that this message was conveyed to Ms. Greene. (ECF 51-3 at 15:30–16:40). And both parties agree that Ms. Greene understood Mr. Degitz was not the one who was forcing her to return to the office. Instead, the return-to-office policy applied to all manufacturing and manufacturing support employees.

Ms. Greene offers no persuasive argument that Trelleborg's return-to-work policy constituted an adverse employment action. In fact, she only offers two sentences in response to Trelleborg's argument, first contending it was "not true" that "all workers were required to return to in-office work," and then stating that her circumstances only changed after experiencing sexual harassment from Mr. Degitz and complaining. She cites no record evidence for either point.

First, Trelleborg does not assert that all workers were required to return to in-office work. It asserts, and Ms. Greene does not dispute, that the policy required all manufacturing and manufacturing support employees to return to the office. Second, Trelleborg asserts, and Ms. Greene does not dispute, that this decision to return some employees to full-time in-office work was company-wide, and not a decision made by Mr. Degitz. Third, even if Ms. Greene's arguments were not undeveloped and

perfunctory, Ms. Greene does not cite any record evidence to support them. Thus, the Court finds as a matter of law that Trelleborg did not take an adverse employment action against Ms. Greene when it required her to return to full-time in-office work.

Next, Trelleborg argues that Ms. Greene's title change from MRO Buyer to Purchaser was not an adverse employment action. In support, it contends that the change of title was a matter of wording only, with no change in Ms. Greene's pay, role, or responsibilities. This is supported by Trelleborg's email correspondence with Ms. Greene. On August 7, 2023, Mr. Degitz forwarded Ms. Greene an email notifying her that Trelleborg was conducting a clean-up and standardization of the many different job titles that existed across the company. (ECF 51-1 at 202). The forwarded email explained that this would not be "a contractual Job Title change but is a change in the wording of your job title." (*Id.*) Ms. Greene responded to this email with a question: "So I am no longer the MRO buyer?" (*Id.*) Mr. Degitz clarified that she was still the MRO buyer, which prompted Ms. Greene to send several emails expressing frustration over the title change. (*Id.* at 198–201).

Ms. Greene's response to this argument is limited to one sentence: "Plaintiff's job title changed 'MRO Buyer' to 'Purchaser', which was made complicated by the refusal of Tom Degitz to provide any feedback to her regarding the change in her position." (ECF 67 at 5). In support, she cites paragraph three of her EEOC filing, which essentially restates this sentence. (ECF 6-1 at 2).

Again, this is not enough. Ms. Greene does not meaningfully engage with Trelleborg's argument, and the evidence she cites does nothing to create a genuine issue

of material fact. The evidence Trelleborg identifies, uncontradicted by Ms. Greene, establishes as a matter of law that Ms. Greene's job title was purely semantic and thus was not an adverse employment action. *See Grayson v. City of Chicago*, 317 F.3d 745, 750 (7th Cir. 2003) (holding that the change of a job title alone is not an adverse employment action).

Third, Trelleborg argues that Ms. Greene's resignation from Trelleborg was not a constructive discharge and thus was not an adverse employment action. Voluntary resignation only constitutes an adverse employment action when it falls into the category of constructive discharge. *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 235 (7th Cir. 2014), *overruled on other grounds by Ortiz*, 843 F.3d 760. Constructive discharge occurs "when, from the standpoint of a reasonable employee, the working conditions become unbearable." *Wright v. Illinois Dep't of Children and Family Svcs.*, 798 F.3d 513, 527 (7th Cir. 2015). There are generally two forms of constructive discharge. The first occurs when an employee resigns due to alleged discriminatory harassment. To show that this form of constructive discharge occurred, a plaintiff must "show working conditions even more egregious than that required for a hostile work environment claim." *Id.* The second occurs "when *the employer's actions* communicate to the employee that she immediately and unavoidably will be terminated." *Ziccarelli v. Dart*, 35 F.4th 1079, 1091 (7th Cir. 2022) (emphasis in original).

Trelleborg contends that Ms. Greene's recording of the meeting with Trelleborg undercuts any claim that her termination was imminent or her work environment egregiously discriminatory beyond the standard for a hostile work environment. As

Trelleborg points out, this meeting took place less than three months before Ms. Greene's resignation. Trelleborg contends that at no point during the meeting does Ms. Greene voice any concerns about harassing conduct. Instead, she focuses on the inconveniences and annoyances of being forced to return to working in-office. Both parties agree that the only objection Ms. Greene raised about Mr. Degitz during this meeting was that he was insufficiently interested in her recovery when she returned to the office after surgery. And both parties agree that at the end of the meeting, Ms. Greene expressed that all her questions had been answered. (ECF 68 ¶ 36).

It seems clear that the second form of constructive discharge did not occur here. To show this form of constructive discharge, a plaintiff must offer evidence that "the handwriting [was] on the wall and the axe was about to fall." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008) (internal quotation omitted) (alteration in original). At no point does Ms. Greene point to evidence indicating that her termination was imminent. Instead, she argues that because she was required to return to in-office work, "her ability to be a foster parent and to transport her own children around was now compromised—the handwriting was on the wall and the axe was about to fall." (ECF 67 at 5). This argument does not hold water. The fact that Trelleborg required Ms. Greene, along with all other manufacturing and manufacturing-support employees, to return to in-office work cannot support the contention that Ms. Greene's termination was imminent, even if this requirement interfered with Ms. Greene's out-of-office activities.

The first form of constructive harassment is a better fit for these facts, but ultimately it also fails. In her deposition, Ms. Greene alleges that Mr. Degitz engaged in

offensive behavior throughout Ms. Greene's tenure at Trelleborg. She recounts Mr. Degitz calling her "ugly," calling her a "cunt" several times, kicking things at her, throwing things at her, and referring to Ms. Esterline's "boobs" and "ass" in front of Ms. Greene. (ECF 51-1 at 106:8–21, 127:19–25). But "[a] claim of constructive discharge requires proof of a causal link between the allegedly intolerable conditions and the resignation." *Green v. Brennan*, 578 U.S. 547, 563 (2016). Ms. Greene cites no evidence supporting such a link between Mr. Degitz's behavior and her resignation. Nor does she support with evidence or authority her bare assertion that "[n]o reasonable person could withstand the type of hostile work environment she faced," and therefore she resigned. (ECF 67 at 5). In fact, Ms. Greene's deposition suggests that the motivating event behind her resignation was the change of her job title. She relates that when she followed up with Mr. Degitz about her change of title, "he thought it was funny, it was humorous, that it upset me so much." (ECF 51-1 at 152:15–19). After this conversation with Mr. Degitz, she confirmed that her job title was changing, then resigned. (*Id.*)

As Ms. Greene has failed to put forward evidence that she was constructively discharged, the Court finds as a matter of law that no constructive discharge occurred. Without a viable claim of adverse employment action, Ms. Greene's discrimination claim may not proceed. Thus, this claim fails as a matter of law.

**c. Retaliation**

Next, Trelleborg argues that Ms. Greene's retaliation claim fails as a matter of law because she cannot show retaliation under either the burden-shifting or the holistic method of proof. A Title VII retaliation claim requires a plaintiff to show that "(1) [s]he

engaged in an activity protected by the statute; (2) [s]he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). The Seventh Circuit generally recognizes two methods of doing so: the burden-shifting approach and the holistic approach.

To prevail under the burden-shifting approach, a plaintiff must establish a prima facie case of retaliation by putting forward evidence to show that "(1) [s]he engaged in a protected activity, (2) [s]he performed [her] job duties according to [her] employer's legitimate expectations, (3) [s]he suffered an adverse action, and (4) [s]he was treated less favorably than similarly situated employees who did not engage in protected activity." *Id.* To prevail under the holistic method, the plaintiff must put forward evidence which, when considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.*

Under the burden-shifting approach, Ms. Greene's claim fails at the threshold because she puts forward no evidence of a similarly situated comparator. In her brief, she argues that Tom Degitz was treated more favorably, and though he was her supervisor at the time she resigned, "there was a time when he was not a supervisor (even though he was always her superior)." (ECF 67 at 6). The Seventh Circuit has consistently held that a superior cannot ordinarily serve as a similarly situated comparator for a subordinate. *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006) ("[O]rdinarily, it will not be the case that a plaintiff is similarly situated to

another employee when the plaintiff is subordinate to that employee."). And Ms. Greene has offered no argument that this case is an exception to that "ordinary" standard. Nor has she identified any other similarly situated individual who could serve as a comparator.

Her claim fares no better under the holistic approach. Though Ms. Greene has identified her deposition testimony as evidence of Mr. Degitz's bad behavior, she does not point to any evidence suggesting that Trelleborg retaliated against her as a result of her complaints about this behavior. The Court has determined that Ms. Greene was not constructively discharged, and both parties agree that Trelleborg implemented a company-wide return-to-office policy that affected all employees in manufacturing and manufacturing support, not just Ms. Greene. Similarly, the change to Ms. Greene's job title was part of a company-wide initiative. There is no evidence that any of these events stemmed from Ms. Greene's complaints about Mr. Degitz's behavior, and Ms. Greene does not identify any other allegedly adverse action that resulted from her complaints about Mr. Degitz. In fact, it does not appear that the record contains any evidence that these complaints occurred beyond nonspecific reference to HR complaints in a Teams chat and Ms. Greene's self-serving allegations in her pleadings, discovery response, and deposition testimony. Even if there were a genuine issue of material fact over whether the changes to Ms. Greene's title and work schedule were adverse actions, as seems unlikely, there is no "causal link" between any protected activity Ms. Greene undertook and those actions. *Lewis*, 909 F.3d at 866. Thus, this claim fails as a matter of law.

**d. Sexual Harassment**

Last, Trelleborg argues that Ms. Greene's sexual harassment claim fails as a matter of law because she cannot meet its legal elements.

Ms. Greene argues that Mr. Degitz's sexual harassment is actionable because it created a hostile work environment for her. To succeed on a hostile work environment theory, Ms. Greene must show that "(1) the work environment was objectively and subjectively offensive, (2) the harassment complained of was based on gender, (3) the conduct was either severe or pervasive, and (4) a basis for employer liability exists." *Hunt v. Wal-Mart Stores, Inc.*, 931 F.3d 624, 627 (7th Cir. 2019). Trelleborg argues that Ms. Greene cannot succeed on any of these elements. At summary judgment, Ms. Greene was required to put forward evidence and argument sufficient to create a genuine issue of material fact over whether she could establish each of these elements at trial. She has failed to do so.

In her response to Trelleborg's argument that her sexual harassment claim fails as a matter of law, Ms. Greene mostly restates the allegations she made in her complaint and elsewhere in her brief. Remarkably, she does not cite to a single piece of record evidence throughout her entire response to Trelleborg's argument on sexual harassment. Nor does she seriously engage with any of Trelleborg's substantive arguments. Instead, her general approach is to flatly deny Trelleborg's argument without elaboration, then list off a series of allegations, some of which reflect those she made in her deposition and some which do not. (Again, it is difficult to discern with certainty which allegations track Ms. Greene's deposition because Ms. Greene fails to

cite to her deposition or any other evidence during this section.) None of this is effective. But it is her argument for Trelleborg's liability as an employer that most clearly falls flat.

Trelleborg argues that Ms. Greene cannot establish a basis for employer liability because an employer can only be liable if it was "negligent either in discovering or remedying the harassment." *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 952 (7th Cir. 2005) (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997)).[5] To establish negligence, a plaintiff generally must show a concerted effort to inform her employer the problem exists, including by taking actions such as lodging complaints or involving high level management. *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 931 (7th Cir. 2017). Here, both parties agree that Trelleborg maintained an Equal Opportunity and Anti-Harassment Policy that covered Ms. Greene during her employment and explained Ms. Greene's recourse in the event of sexual harassment. Trelleborg points out that when Ms. Greene availed herself of that process in the past, Trelleborg immediately responded. But when it comes to Mr. Degitz, Trelleborg argues that Ms. Greene's vague assertion in her deposition that she made "approximately 35" reports of sexual harassment about Mr. Degitz is not enough at summary judgment. (ECF 51-1 at 131:7–21). In Ms. Greene's deposition, she stated that she forwarded emails to her personal account for approximately eight months before resigning. (ECF 193:6–13). And

---

[5] The Court notes that in its brief, Trelleborg represented this quotation as coming from *Vance v. Ball State Univ.*, 570 U.S. 421, 470 (2013). Though the proposition of law is accurate, the quoted language is not present in the *Ball State* decision. Instead, it appears to derive from the line of Seventh Circuit cases quoted by the Court. Trelleborg's misrepresentation is especially concerning given the difference in precedential force between a Supreme Court opinion and an opinion from the Seventh Circuit. Trelleborg is warned to take more care with its citations.

Ms. Greene admits that she forwarded all emails recounting her issues with Mr. Degitz to her personal account. (ECF 68 ¶ 40). Finally, Ms. Greene confirmed that she produced all emails about Mr. Degitz to which she had access. (*Id.* ¶ 41). But, as Trelleborg points out, the record does not contain these emails.

In essence, Trelleborg argues that no reasonable juror could find for Ms. Greene on this issue because (1) she states that she complained near-constantly about Mr. Degitz, including over email, (2) she forwarded all complaining emails she could access to her personal email account, and (3) she produced those emails as part of this litigation, but for some unexplained reason those emails do not appear in the record. Ms. Greene does not have a satisfactory response. Rather than addressing this remarkable gap in the evidence at summary judgment, she restates in conclusory fashion her allegations against Mr. Degitz and asserts without citing any record evidence that "[t]here is plenty of evidence from which a reasonable juror could conclude" that Trelleborg is liable for Mr. Degitz's conduct. (ECF 67 at 12).

Vague reference to "plenty of evidence" will not suffice at this stage. Summary judgment is the "put up or shut up moment" in a lawsuit, and Ms. Greene has failed to put up. *Hammel*, 407 F.3d at 859. Ms. Greene has asserted that she complained almost every day to Trelleborg about Mr. Degitz's conduct, but she has failed to produce evidence supporting that. Without evidence of her complaints, there is no basis for Trelleborg to be held liable, and without a basis for employer liability, Ms. Greene's hostile work environment sexual harassment claim cannot survive summary judgment.

The Court is troubled by the undeveloped and conclusory nature of Ms. Greene's response brief, as well as her consistent failure to identify or cite relevant evidence, frequent typographical errors, and generally disorganized argument. At one point in her brief, Ms. Greene contends that "[s]exual harassment is not a game – a woman does not 'lose' simply because she cannot recall a specific date she complained." (ECF 67 at 9). But Ms. Greene does not lose at summary judgment because she cannot recall a specific date. She loses because she has failed to put forward evidence that creates a genuine issue of material fact over whether a reasonable jury could find in her favor. This was her obligation at summary judgment, and she failed to meet it.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** Trelleborg's Motion for Summary Judgment. (ECF 50). The Clerk is **DIRECTED** to close this case.

SO ORDERED on September 1, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT